IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESUS ANDRES VALDEZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:12-CV-4368-D |
| VS. | § | |
| | § | |
| CELERITY LOGISTICS, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging overtime pay and minimum wage violations and retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted, and one defendant moves under Rule 12(e) for a more definite statement. Among the questions presented by the motions to dismiss is whether plaintiffs have pleaded a plausible claim for successor liability. For the reasons that follow, the court grants the motions to dismiss, grants plaintiffs leave to replead, and denies the motion for more definite statement.

I

This is an action under the FLSA by plaintiffs Jesus Andres Valdez, Marta Patricia Castillo, and all others similarly situated against defendants Segue Distribution, Inc. ("Segue"), Celerity Logistics, Inc. ("CLI"), Celerity Acquisitions, Inc. d/b/a Celerity Logistics Company ("CAI"), Insperity, Inc. f/k/a Administaff, Inc., BeavEx, Inc.

("BeavEx"),[1] Mike Medley, and Scott Watts.  Plaintiffs assert claims for overtime and minimum wage violations under the FLSA, as well as for successor liability and for retaliation under the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).  Pertinent to the instant motions, plaintiffs allege that BeavEx acquired the assets of CAI, who had previously acquired the assets of CLI, who had previously acquired the assets of Segue. Plaintiffs further allege that each successor (BeavEx, CAI, and CLI) "has or had the same managers / supervisors, business model, employees, equipment and facilities and provides or provided the same services to the same clientele as its predecessor."  Am. Compl. ¶¶ 29 (CLI), 30 (CAI), 31 (BeavEx).  Under plaintiffs' successor liability theory, BeavEx, as the successor corporation to CAI, is liable for the liabilities of CAI, who is in turn liable for the liabilities of CLI, who is in turn liable for the liabilities of Segue.[2]

CLI and CAI move to dismiss plaintiffs' successor liability claim, contending that successor liability does not apply to FLSA claims, and that, even if it does, plaintiffs have not pleaded a plausible claim for successor liability.  By separate motion,[3] BeavEx moves to

---

[1]BeavEx asserts that the amended complaint incorrectly identifies BeavEx Incorporated as "BeavEx, Inc."

[2]In addition to their successor liability claim against CLI, CAI, and BeavEx, plaintiffs bring claims for overtime and minimum wage violations against all defendants and for retaliation against BeavEx.

[3]CLI and CAI, and BeavEx, are represented by different counsel and have filed separate motions and briefs.  The court will address both Rule 12(b)(6) motions in this memorandum opinion and order because they raise common issues of law and fact and plaintiffs' responses to both motions are substantially similar.  The court refers collectively to CLI, CAI, and BeavEx as "defendants," and to the parties separately as "CLI," "CAI," and "BeavEx" where the context requires.

dismiss plaintiffs' successor liability claim on similar grounds, and it also moves under Rule 12(e) for a more definite statement regarding plaintiffs' allegations about their employment with BeavEx.[4]  Plaintiffs oppose the motions.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)).  To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

---

[4]BeavEx moves in the alternative under Rule 12(e) for a more definite statement concerning plaintiffs' successor liability claim.  Because the court is dismissing this claim, it does not reach this ground of BeavEx's motion for a more definite statement.  The court reaches the balance of the Rule 12(e) motion for a more definite statement, however, concerning plaintiffs' allegations about their employment with BeavEx.  *See infra* § IV.

- 3 -

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

III

The court first considers defendants' Rule 12(b)(6) motions to dismiss plaintiffs' successor liability claim.

A

Defendants contend that the successor liability doctrine does not apply to FLSA claims, and that, even if it does, plaintiffs have failed to state a claim for successor liability because they have not pleaded facts, with sufficient specificity, that would satisfy the requirements of such a claim.  Plaintiffs respond that successor liability is cognizable under the FLSA and that the allegations in their amended complaint are sufficient to state a plausible claim.

B

When a company is sold in an asset sale, the buyer ordinarily acquires the company's assets but not its liabilities.  *See Teed v. Thomas & Betts Power Solutions, L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013).  Under federal common law, there is an exception to this general rule known as the doctrine of successor or successor liability.  This doctrine is "derived from labor law principles enunciated in four Supreme Court cases."  *Rojas v. TK Commc'ns, Inc.*,

- 4 -

87 F.3d 745, 749 (5th Cir. 1996) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964); *NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272 (1972); *Howard Johnson Co. v. Det. Local Joint Exec. Bd.*, 417 U.S. 249 (1974); *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27 (1987)).  Although initially developed in the context of labor relations, the doctrine of successor liability has been extended to statutes governing employment discrimination, such as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.  *Id.* at 750.  The doctrine's underlying policy "is that an employee's statutory rights should not be vitiated by the mere fact of a sudden change in the employer's business." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985); *see also Rojas*, 87 F.3d at 750 ("The policy underlying the successor doctrine [is] to protect an employee when the ownership of his employer suddenly changes[.]").  The doctrine is generally applied in circumstances where, absent successor liability, an employer could complete a corporate sale that would extinguish its liability to the workers, and the workers would be powerless to stop it.  *See Teed*, 711 F.3d at 766.

The Fifth Circuit has not decided whether successor liability is available under the FLSA.  In *Powe v. May*, 62 Fed. Appx. 557, 2003 WL 1202795 (5th Cir. Mar. 3, 2003) (per curiam), the panel assumed, without deciding, that the doctrine applies to the FLSA.  CLI and CAI suggest that *Powe* supports the conclusion that successor liability is *never* appropriate under the FLSA, but their assertion lacks force.

In *Powe* a former deputy sheriff of a Louisiana parish sued the current sheriff for violations of the FLSA that occurred during the tenure of the defendant-sheriff's predecessor.

*Id.* at 557.  The district court concluded that the current sheriff could not be held liable under the successor doctrine for the acts of his predecessor, and the Fifth Circuit affirmed.  *Id.*  The Fifth Circuit explained:

> Because we find that liability under the federal successorship doctrine is inappropriate in this case, we assume without deciding that the doctrine applies to the FLSA.  There are three main criteria for imposing successor liability: (1) a substantial continuity of business operations from the previous entity to its successor; (2) notice to the successor; and (3) the successor's ability to provide relief.  There is insufficient continuity between [the prior sheriff's] administration and [the defendant's] administration to justify the imposition of successor liability.

*Id.* (citing *Rojas*, 87 F.3d at 750).  The panel reasoned that substantial continuity did not exist because, under the Louisiana Constitution, each sheriff is elected and every sheriff is a political subdivision unto himself.  *Id.*  It also noted that, under Louisiana law, there is no continuity of assets between administrations because each sheriff is responsible for raising and spending his own funds.  *Id.*  And the panel concluded that imposing successor liability would be counterproductive because it would hinder the defendant's ability to police the parish but would not deter future FLSA violations, because the successor's term would expire on a predetermined basis.  *Id.*

Although in *Powe* the Fifth Circuit affirmed the district court's conclusion that there was no successor liability, the case does not stand for the proposition that successor liability *never* applies under the FLSA.  The panel assumed, without deciding, that the doctrine did apply, and nothing in the opinion suggests that the Fifth Circuit would decline to enforce successor liability in an appropriate FLSA case.  The panel relied on factors that are unique

to the political and economic reality of a sheriff's office in Louisiana.  These factors are inapposite to a case like this one.

Two other circuits have squarely addressed the question, and both have held that successor liability is available under the FLSA.  In *Steinbach v. Hubbard*, 51 F.3d 843 (9th Cir. 1995), the Ninth Circuit borrowed the test for analyzing successor liability claims under the National Labor Relations Act and held that successor liability can attach under the FLSA depending on whether (1) the subsequent employer is a bona fide successor, (2) the subsequent employer had notice of the potential liability, and (3) the predecessor is able to provide adequate relief directly.  *Id.* at 845-46.  The court emphasized that "[w]hether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor."  *Id.* at 846.

Similarly, in *Teed* the Seventh Circuit held that the doctrine of successor liability applies to the FLSA, but it eschewed a multi-factor test in favor of the following standard: "We suggest that successor liability is appropriate in suits to enforce federal labor or employments laws—even when the successor disclaimed liability when it acquired the assets in question—unless there are good reasons to withhold such liability."  *Teed*, 711 F.3d at 766.  The court noted that the lack of notice of potential liability was one such reason (the second *Steinbach* factor).  *See id.*  Although there is some variation as to the precise requirements of the doctrine, the trend in the case law is toward recognition of successor liability under the FLSA.  *See, e.g., Cuervo v. Airport Servs., Inc.*, ___ F.Supp.2d ___, 2013 WL 6170661, at *2-3 & n.5 (S.D. Fla. Nov. 22, 2013) (collecting cases).

Because *Powe* does not suggest otherwise, because the trend among the courts that have decided the question is to recognize successor liability in FLSA cases, and because, so far as the court is aware, no court has expressly held that successor liability is unavailable under the FLSA, the court holds that successor liability can be imposed under the FLSA. This conclusion is consistent with the approach of district courts in this circuit. *See Cooke v. Jaspers*, 2010 WL 918342, at *6 (S.D. Tex. Mar. 10, 2010) (holding that complaint did not contain specific allegations to put defendant on notice of successor liability under FLSA, but recognizing possibility of successor liability); *Schutze v. Fin. Computer Software, LP*, 2006 WL 2842008, at *10-11 (N.D. Tex. Sept. 29, 2006) (Sanders, J.) (denying summary judgment in case involving FLSA claim, in part because of fact issues on successor liability). And as several courts have recognized, this conclusion is supported by the policy that successor liability promotes the remedial purposes of the FLSA. *See, e.g., Teed*, 711 F.3d at 766; *Steinbach*, 51 F.3d at 845. Without successor liability, a violator of the FLSA "could escape liability, or at least make relief much more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer (for such an assumption would reduce the purchase price by imposing a cost on the buyer) and then dissolving." *Teed*, 711 F.3d at 766. The rationale for recognizing successor liability in the context of labor relations, where Congress was concerned with protecting workers' rights and eliminating unfair labor practices, applies with similar force to the FLSA, by which Congress intended "to protect workers' standards of living through the regulation of working conditions." *Steinbach*, 51 F.3d at 845 (citing 29 U.S.C. § 202). The court therefore concludes that plaintiffs can

recover under the FLSA on the basis of successor liability.

## C

Having concluded that successor liability is available under the FLSA, the court must now decide the test or standard that applies when determining whether plaintiffs have pleaded a plausible claim for successor liability.

## 1

The court first considers the Fifth Circuit's analysis of successor liability in *Rojas* (Title VII) and *Powe* (FLSA). The Fifth Circuit initially extended the doctrine of successor liability from labor relations cases to employment discrimination cases in *Rojas*. *Rojas* incorporated the following nine-factor test developed by other circuits:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Rojas*, 87 F.3d. at 750 (citing *Musikiwamba*, 760 F.2d at 750; *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir. 1974)). Under this test, "the first two factors are critical,"[5] and "[t]he remaining seven simply provide a foundation for analyzing the larger

---

[5]The first factor is "notice of the charge or pending lawsuit," but courts in FLSA cases have generally construed this phrase to mean "notice of potential liability." *See, e.g., Battino*

question of whether there is a continuity in operations and the work force of the successor and predecessor." *Id.* (citation and internal quotation marks omitted).  In *Powe* the panel favorably cited *Rojas* and noted that the "three main criteria" are "(1) a substantial continuity of business operations from the previous entity to its successor; (2) notice to the successor; and (3) the successor's ability to provide relief."[6]  *Powe*, 62 Fed. Appx. at 557.

2

The court next considers the approach taken by a growing number of courts. Consistent with *Powe*'s observation that substantial continuity of business operations from

---

*v. Cornelia Fifth Ave., LLC*, 861 F.Supp.2d 392, 405-06 (S.D.N.Y. 2012).  As such, a defendant can be on notice of potential FLSA liability even if the asset sale occurs prior to the filing of any lawsuit against the defendant or the defendant's predecessor.  This conclusion is consistent with the Fifth Circuit's analysis in *Powe*, where the court favorably cited *Rojas* and stated that one of the main criteria for determining successor liability is "notice to the successor," without specifically requiring "notice of the charge or pending lawsuit."  *Powe*, 62 Fed. Appx. at 557.

[6]In *Powe* the panel stated that the third criterion for imposing successor liability is "the *successor's* ability to provide relief."  *Powe*, 62 Fed. Appx. at 557 (emphasis added).  In support of its conclusion that "[t]here are three main criteria for imposing successor liability," one of which is "the successor's ability to provide relief," the panel cited *Rojas*. But *Rojas* states that the relevant factor is the *predecessor's* ability to provide relief—not the *successor's*.  *See Rojas*, 87 F.3d at 750.  *Rojas* adopted the nine-factor test that the Sixth Circuit had used in *MacMillan*.  *MacMillan* also refers to the *predecessor's* ability to provide relief.  *See MacMillan*, 503 F.2d at 1094.  Because *Rojas* is published and *Powe* is not, and because the panel in *Powe* cited *Rojas* without suggesting that it was modifying the *Rojas* test, the court concludes that this critical factor is the *predecessor's* ability to provide relief. *See Rojas*, 87 F.3d at 750 ("This court agrees . . . that the first two factors are critical.").  The *successor's* ability to provide relief is also potentially relevant, *see Teed*, 711 F.3d at 766 (noting that whether *successor* can provide relief is a "'goes without saying' condition, not usually mentioned"), but it is not typically articulated as part of the multi-factor test.  *See, e.g., Rojas*, 87 F.3d at 750; *Musikiwamba*, 760 F.2d at 750; *MacMillan*, 503 F.2d at 1094.

predecessor to successor is a primary criterion, most courts recognizing successor liability under the FLSA have applied some version of a "substantial continuity test."  *See, e.g., De Ping Song v. 47 Old Country, Inc.*, ___ F.Supp.2d ___, 2013 WL 5498184, at *6 (E.D.N.Y. Oct. 3, 2013) ("[C]ourts applying the substantial continuity test rely on the fact that FLSA cases are driven by the same policy concerns raised in other labor law cases, and have taken guidance from FLSA cases decided outside of this circuit.").  The test is largely based on the Ninth Circuit's discussion in *Steinbach*.  In *Steinbach* the court concluded that whether successor liability attaches depends on whether (1) the subsequent employer is a bona fide successor, (2) the subsequent employer had notice of the potential liability, and (3) the predecessor is able to provide adequate relief directly.  *Steinbach*, 51 F.3d at 845-46.  The Ninth Circuit did not clarify whether these requirements are necessary or weighted in any way, but it did emphasize that "[w]hether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor."  *Id.* at 846.  Courts have generally followed this approach, and although there is some variation in the language used to articulate the test, the basic concept is clear: successor liability is appropriate when the successor steps into the shoes of the predecessor after the asset sale and does not meaningfully change the business already in place.  *See, e.g., Cuervo*, 2013 WL 6170661, at *4; *De Ping Song*, 2013 WL 5498184, at *5-8; *Thompson v. Bruister & Assocs., Inc.*, 2013 WL 1099796, at *5-6 (M.D. Tenn. Mar. 15, 2013); *Battino v. Cornelia Fifth Ave., LLC*, 861 F.Supp.2d 392, 401-08 (S.D.N.Y. 2012); *Chao v. Concrete Mgmt. Res., L.L.C.*, 2009 WL 564381, at *2-3 (D. Kan. Mar. 5, 2009).

3

The court now considers an important qualification to the substantial continuity test. Many courts that apply this test note that substantial continuity should not of itself be considered sufficient for successor liability. *See, e.g., De Ping Song*, 2013 WL 5498184, at *8 ("Such continuity, standing alone, should not necessarily lead to imposition of successor liability."). The reason for this qualification is that it would be improper to impose successor liability on an innocent purchaser who acquired the assets of the predecessor and continued the business of the previous entity, but who was never on notice that it was incurring potential liabilities that, for example, might warrant including an indemnification clause in the purchase contract or insisting on a lower purchase price. *Cf. Musikiwamba*, 760 F.2d at 750 ("The successor doctrine is derived from equitable principles, and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser . . . when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price."). Consistent with this rationale, courts have not deemed substantial continuity to be the only relevant criterion for imposing successor liability. And they have particularly emphasized the importance of notice to the successor and of an overall view of the equities in the case. *See, e.g., Teed*, 711 F.3d at 766-69; *Cuervo*, 2013 WL 6170661, at *4; *Battino*, 861 F.Supp.2d at 404-08. This type of flexible, multifaceted approach makes sense given that successor liability is at bottom an equitable doctrine designed to fill gaps in statutes that do not address ownership transfers. *See Steinbach*, 51 F.3d at 846; *see also Howard Johnson*

*Co.*, 417 U.S. at 256 ("Particularly in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate.").

4

Relying on the foregoing, the court concludes that, in order to state a plausible claim for successor liability against the defendant in question, plaintiffs must plead facts that enable the court to analyze the following elements: (1) whether there is substantial continuity between the business operations of the successor and the predecessor; (2) whether the successor had notice of potential liability when it acquired the relevant assets; (3) whether the predecessor is able to provide relief directly;[7] and (4) whether the overall equities support the imposition of successor liability.  Although the remaining factors identified in *Rojas* are relevant and can be addressed when pleading successor liability under the FLSA, they simply provide a foundation for analyzing the larger question whether there is a continuity of

---

[7]Some courts have noted that whether the predecessor could have provided relief *before* the asset sale is also relevant.  *See, e.g., Teed*, 711 F.3d at 765; *Musikiwamba*, 760 F.2d at 750-51.  They have reasoned that "[i]mposing liability on a successor when a predecessor could have provided no relief whatsoever is likely to severely inhibit the reorganization or transfer of assets of a failing business" and would essentially provide a windfall to plaintiffs.  *Musikiwamba*, 760 F.2d at 751; *accord Steinbach*, 51 F.3d at 847 (noting that "the purpose of successorship liability is not to provide windfalls for employees").  Notably, the predecessor's inability to provide relief *before* the sale cuts *against* successor liability, but the predecessor's inability to provide relief *after* the sale cuts *in favor* of successor liability.

- 13 -

operations between the successor and predecessor.[8]

D

Applying the foregoing elements to plaintiffs' amended complaint, the court now considers whether plaintiffs have pleaded a plausible claim for successor liability.

1

The factual allegations concerning successor liability are confined to six paragraphs of the amended complaint. *See* Am. Compl. ¶¶ 29-34.  Plaintiffs assert that CLI acquired the assets of Segue and "has or had the same managers / supervisors, business model, employees, equipment and facilities and provides or provided the same services to the same clientele as [Segue]." *Id.* at ¶ 29.  In virtually identical language, plaintiffs allege that CAI acquired the assets of CLI, *see id.* ¶ at 30, and that BeavEx acquired the assets of CAI, *see id.* at ¶ 31.  Plaintiffs then make conclusory allegations that CLI is liable as a successor for the liabilities of Segue, CAI is liable as a successor for the liabilities of CLI, and BeavEx is liable as a successor for the liabilities of CAI.  *See id.* at ¶¶ 32-34.

BeavEx challenges the sufficiency of the amended complaint on three grounds: first, the allegation that BeavEx "acquired the assets of [CAI]" is insufficient to establish that BeavEx is a bona fide successor to CAI under *Steinbach*; second, the amended complaint

---

[8]The remaining factors are whether the successor uses the same facilities; whether the successor uses the same or substantially the same work force; whether the successor uses the same or substantially the same supervisory personnel; whether the same jobs exist under substantially the same working conditions; whether the successor uses the same machinery, equipment, and methods of production; and whether the successor produces the same product.  *See Rojas*, 87 F.3d at 750.

fails to include any allegation establishing that BeavEx had notice of its potential liability under the FLSA when it acquired the assets of CAI; and third, plaintiffs have failed to plead any factual allegation concerning whether CAI can provide adequate relief.[9]  Plaintiffs respond that their amended complaint properly alleges that BeavEx is a bona fide successor because it alleges that BeavEx had the same managers and supervisors, business model, employees, equipment, and facilities as CAI.[10]  They rely on the same allegation to establish notice, arguing that this factual allegation demonstrates "constructive if not actual notice of Plaintiffs' claims."  P. Resp. Br. to BeavEx Mot. 5.  And they maintain that defendants possess facts concerning the ability of CAI to provide relief in this case and that plaintiffs should be afforded the opportunity to discover and verify business records regarding CAI's financial status.

2

The court holds that plaintiffs' amended complaint alleges the *possibility* of successor liability, but it fails to *show* that plaintiffs are entitled to relief on their successor liability claim.  *See Iqbal*, 556 U.S. at 679.  Plaintiffs rely on the allegation that BeavEx, as the successor, "has or had the same managers / supervisors, business model, employees,

---

[9]CLI and CAI raise similar challenges to the sufficiency of these allegations.  Because BeavEx's arguments are more developed than CLI and CAI's arguments, and because BeavEx filed a reply brief and CLI and CAI did not, the court addresses BeavEx's contentions individually, recognizing that they are representative of the ones advanced by CLI and CAI.

[10]Plaintiffs respond in substantially similar fashion to the motion of CLI and CAI.

equipment and facilities and provides or provided the same services to the same clientele as

its predecessor." Am. Compl. ¶ 31. But this assertion does not sufficiently allege notice

because it does not provide any factual detail about the knowledge of BeavEx's ownership

group. Even if BeavEx employed the same managers and supervisors as CAI after the asset

purchase, the amended complaint does not allege that those managers and supervisors knew

about potential FLSA liability themselves or that they informed BeavEx's ownership of the

potential liability before the asset sale.[11] And the fact that BeavEx maintained the same

business model, client base, and work facilities likewise fails to support any inference about

the knowledge of BeavEx's ownership group. Even if plaintiffs' allegations support the

inference that there was some level of continuity between the business operations of CAI and

BeavEx, this does not alone show that successor liability is appropriate. The alleged

continuity of the business operations is not strong enough to overcome the lack of factual

content concerning notice.[12] Moreover, the amended complaint fails to address whether the

---

[11]Of course, the court recognizes the general rule that the knowledge of officers and employees at a certain level of responsibility within the corporation is imputable to the corporation itself, *see, e.g., U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 354-55 (5th Cir. 2013) (Jolly, J., concurring), but the amended complaint does not allege sufficient factual content to enable the court to reasonably draw this inference. The amended complaint is silent about which, if any, employees knew about potential FLSA liability and what their level of responsibility was. It also does not identify anyone in the ownership group of BeavEx or provide any further details about the asset sale between CAI and BeavEx. The amended complaint likewise fails to allege any details concerning the knowledge of CAI's or CLI's ownership group.

[12]Plaintiffs rely on the same language in their allegations of successor liability against CAI and CLI to establish notice.

predecessor is able to provide adequate relief directly or whether the overall equities support the imposition of successor liability. Accordingly, the court holds that plaintiffs have failed to state a plausible claim for successor liability.

IV

The court next considers BeavEx's motion under Rule 12(e) for a more definite statement concerning plaintiffs' alleged employment with BeavEx.

A

"A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F.Supp.2d 611, 621 (N.D. Tex. 2013) (Fitzwater, C.J.) (quoting Rule 12(e)). "'Motions for a more definite statement are generally disfavored.'" *Johnson v. BAE Sys. Land & Armaments, L.P.*, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (Fitzwater, C.J.) (quoting *Russell v. Grace Presbyterian Vill.*, 2005 WL 1489579, at *3 (N.D. Tex. June 22, 2005) (Solis, J.)). "'When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted.'" *Id.* (quoting *Brown v. Whitcraft*, 2008 WL 2066929, at *1 (N.D. Tex. May 15, 2008) (Fitzwater, C.J.)).

B

BeavEx moves for a more definite statement concerning plaintiffs' alleged employment. It requests that plaintiffs be required to plead when BeavEx allegedly

employed them, whether plaintiffs were misclassified as independent contractors or as exempt under the FLSA, and when the alleged FLSA violations occurred. Plaintiffs respond that the allegations of the amended complaint are not so ambiguous as to prevent BeavEx from reasonably preparing a response, and that BeavEx is attempting to use Rule 12(e) to seek information that should be obtained through discovery.

The court concludes that the amended complaint is not so vague or ambiguous that BeavEx cannot reasonably prepare a responsive pleading. The amended complaint alleges that BeavEx "was Plaintiffs' employer and/or joint employer of Plaintiffs for the relevant time period," BeavEx "had control over Plaintiffs' work during the relevant time period," and "Plaintiffs were financially dependent on [BeavEx]." Am. Compl. ¶ 7. Although the amended complaint lacks the specificity that BeavEx requests, it does not impede BeavEx's ability to prepare a responsive pleading. *See Conceal City*, 917 F.Supp.2d at 621. The allegations are not so vague that BeavEx is left unable to admit or deny them, and the additional information BeavEx seeks can be developed in discovery. *See Johnson*, 2012 WL 5903780, at *4. The court therefore denies BeavEx's motion for a more definite statement.[13]

## V

Although the court is dismissing plaintiffs' successor liability claim, it will permit them to replead. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68

---

[13]Because the standard for deciding a Rule 12(e) motion differs from the standard that governs a Rule 12(b)(6) motion, this ruling does not suggest a view on the merits of a Rule 12(b)(6) motion that pertains to the same issue.

(N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (internal quotation marks and citation omitted)). Plaintiffs were unaware until today's decision of the test that this court would apply when deciding whether successor liability had been plausibly pleaded. Because plaintiffs have not stated that they cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 30 days from the date this memorandum opinion and order is filed to file a second amended complaint.

Given the nature and elements of the successor liability test, there may be cases in which a plaintiff cannot state a claim for such liability without conducting some discovery related to one or more elements. If plaintiffs maintain that they cannot file a second amended complaint until they have conducted discovery on successor liability, they can move for an enlargement of this deadline, stating the element or elements on which discovery is needed.[14]

*    *    *

For the reasons explained, CLI and CAI's September 10, 2013 partial motion to dismiss and BeavEx's October 2, 2013 partial motion to dismiss plaintiffs' successor liability

---

[14]The court assumes that defendants will agree under such circumstances to a reasonable extension of the deadline to file a second amended complaint.

claim are granted, BeavEx's October 2, 2013 motion for a more definite statement is denied, and plaintiffs are granted leave to replead.

**SO ORDERED**.

February 26, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE